■ In the Matter of ISRAEL RUIZ, JR., Respondent, v CAR-MELO SAEZ, Appellant.—Judgment, Supreme Court, Bronx County (Carl J. Mugglin, J.), entered August 18, 1986, which in this election proceeding granted petitioner's application to invalidate the designating petition of Carmelo Saez for State Senator, 32nd Senatorial District, on the Democratic Party primary ballot for September 9, 1986, is reversed, on the law, and the Board of Elections is directed to reinstate Carmelo Saez as a candidate in the primary election.

The report of the Referee which was adopted by the court reported that the total number of signatures filed by candidate Saez was 5,364. The Board found a total of 3,525 signatures invalid, leaving 1,839 signatures as presumptively valid. The minimum number of valid signatures required for ballot quali-fication is 1,000. Of the invalid signatures, 773 were found to be in the nature of nonregistration, and 442 were from per-sons who resided outside the 32nd Senatorial District.

Two of the candidate's subscribing witnesses appeared be-fore the Referee and testified, as a result of which approxi-mately 120 additional signatures were stipulated as invalid. Based upon the foregoing, the court found that this candi-date's petition was permeated with fraud (Matter of Lerner v Power, 22 NY2d 767; Matter of Mercorella v Benza, 37 NY2d 792).

Special Term erroneously drew the strongest adverse inference against the integrity of the petition as a whole because nine subscribing witnesses, who had been duly subpoenaed along with the candidate and his spouse, failed to respond and testify. But, even assuming that the signatures attested to by the nine were to be disallowed, no more than 300 additional surviving signatures would have been sacrificed, thus leaving a balance of over 1,500 unchallenged signatures. It should be noted that the entire designating petition consisted of five volumes, and was gathered by more than 100 separate subscribing witnesses. Thus the absent subscribing witnesses constituted less than 10% of those who participated in the signature gathering process. No evidence was adduced implicating the candidate himself in any of the cited irregularities. The record fell far short of demonstrating that "the questioned petitions were the product of the knowing, systematic acceptance of purported signatures of innumerable persons subscribed by others, thus constituting permeating fraudulent representation." *(Matter of Lerner v Power, supra,* at p 768.) Concur—Fein, Ellerin and Wallach, JJ.

Kupferman, J. P., and Kassal, J., dissent in a memorandum as follows by Kupferman, J. P. I dissent and would affirm. While ordinarily the fact that 70% of the signatures were invalid would not compel a determination that the irregularities permeated the designating petition with fraud, the fact that the candidate and his wife, as well as a substantial number of his signature gatherers, ignored subpoenas and did not come to the hearing, would provide a sound basis for Special Term to reach the conclusion that it did. *(See, Matter of Ruiz v McKenna,* 40 NY2d 815.)